IOWA CITY, Appellee, v. FRANK MCINNERNY, Appellant.

**Ordinances:** CLOSING SALOON ON ELECTION DAY. Under Code, section 2445, empowering cities and towns to adopt rules and ordinances for further regulating and controlling the liquor traffic for the preservation of peace and good order, and section 680, authorizing cities to pass ordinances for the public safety, to preserve the health, promote prosperity, and improve the morals, order, comfort, and convenience of the public, a city council may pass ordinances, not in conflict with the state law, regulating the closing of saloons on election day.

CONFLICT WITH STATE LAW. Code, section 2445, authorizes cities and towns to adopt rules and ordinances for further regulating and controlling the liquor traffic, not in conflict with the provisions of the chapter; and section 2448, subdivision 9, in the same chapter, prohibits a saloon from opening on any election day. The penalties provided by statute for violation of the liquor law are prosecutions, either civil or criminal, for keeping a nuisance, or for unlawful sales, or the liquors may be confiscated. *Held*, that a city ordinance which prohibited the open-

ing of a saloon on election days, and prescribed a fine not exceeding $50 for its violation, was in conflict with the state laws and invalid.

*Appeal from Johnson District Court.*—HON. M. J. WADE, Judge.

FRIDAY, OCTOBER, 11, 1901.

DEFENDANT was accused of keeping his saloon open on election day, contrary to the provisions of an ordinance of plaintiff city. On appeal to the district court he was convicted, and appeals to this court.—*Reversed.*

*Ranck & Bradley* for appellant.

*W. H. Bailey* for appellee.

DEEMER, J.—The provisions of the "mulct law" are pretty generally understood, and need not be referred to further than is necessary to understand the exact point made in the case. Section 2447 of the Code provides: "Effect of Payment. Nothing in this chapter so far as it relates to the mulct tax shall be in any way construed to mean that the business of selling intoxicating liquors is in any way legalized nor is it licensed. Nor shall the assessment or payment of any tax for the sale of liquors as aforesaid protect the wrong-doer from any penalty now provided by law, except as provided in the next section." Section 2448 gives all of the exceptions which the person who is selling intoxicating liquors must observe before he is protected from the penalties of the prohibitory law. One of these exceptions is given in subdivision 9, and is as follows: "(9) Opening and Closing. The place shall not be open nor any sales made earlier than 5 a. m. or later than 10 p. m. on any day. It shall not be open at all nor shall any sales be made on the first day of the week, commonly called Sunday, nor any election day or legal holiday, nor on the evenings of such days." Section 2455 reads as follows: "For the purpose of protecting the properties of munici-

palities and its inhabitants, and of preserving peace and good order therein, cities and towns and cities acting under special charters have power to levy and collect additional taxes, and to adopt from time to time rules and ordinances for further regulating and controlling such traffic, not in conflict with the provisions of this chapter." The ordinance adopted by the city under the provisions of section 2455 imposes an additional tax of $400 upon every person engaged in the business of selling intoxicating liquors, provides for its certification, and contains certain regulations regarding the conduct of the traffic which are practically the same as those found in section 2448 of the Code; among others being this: that the place shall not be kept open, nor shall any sales be made, on election day. A penalty or fine of not exceeding $50 or less than $10 and the costs of prosecution is imposed for violating any of the provisions of the ordinance. The defendant was accused of keeping his saloon open and making sales on an election day. The evidence clearly establishes the facts charged, but it is claimed that the ordinance is invalid, and that the charge is bad for duplicity. The alleged invalidity consists, as we understand it, in want of authority on the part of the city to pass the ordinance; conflict between the ordinance and statutes; that the penalty for violation is less than that prescribed by the state law, and for the further reason that the ordinance is, in effect, a license law, unauthorized by our statutes. While the statute in express terms says that the business of selling intoxicating liquors is not legalized, etc., yet we have squarely held that a person operating under the mulct law is engaged in a lawful occupation. *McKeever v. Beacom,* 101 Iowa, 173. If that be true, then the city, in enacting the ordinance, was not attempting to regulate an act prohibited by statute. It will hardly be contended that an ordinance requiring saloon keepers to keep their buildings closed and to refrain from selling liquors on Sundays, election days, and holidays does not tend to preserve the peace and good order of the in-

habitants of the municipality. This point is so plain that we do not deem it necessary to cite any authorities in its support. Recognizing the doctrine that a municipal corporation has such powers, and such only, as are expressly granted to it by the legislature, or such as may be fairly and reasonably implied from those granted, we turn to the statutes to discover, if we may, the authority for the ordinance in question. Section 680 of the Code provides, in substance, that cities have power to pass ordinances not inconsistent with the laws of the state, to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience, etc., and to enforce obedience by fine not exceeding $100. We have already quoted section 2455, found in the mulct law, giving them authority to adopt rules and ordinances for regulating and controlling the liquor traffic. Surely the city council of the plaintiff city had authority to pass the ordinance in question, unless it be inconsistent with the laws of the state or in conflict with the provisions of the mulct law. There is no direct penalty imposed by statute for the mere act of keeping a saloon open on election day. If one should do so, he would lose the benefits of the bar to proceedings for the sale of liquors, but would not be punished, except indirectly for keeping his place open on a particular day. We have seen that the mulct law legalizes sales of liquor in particular places and under certain conditions. Where thus legalized, municipalities certainly have the right, under either of the statutes cited, to pass ordinances for the regulation of saloons, and to preserve the public peace and the good order of society. Were the act of keeping the saloon open on election day directly prohibited by the state law, this would not of itself prevent the municipality from prescribing a punishment for the same offense. *Town of Bloomfield v. Trimble,* 54 Iowa, 399. But it is said that the ordinance is inconsistent with and conflicts with the state law, and reliance is placed on a num-

ber of cases, to some of which we will call attention during the course of the opinion. Under the general welfare clause of the statute it is undoubtedly competent for a municipality to fix the time and hours during which business houses may be kept open, and to fix a penalty for disobedience. Dillon Municipal Corporations (4th ed.) section 397, and cases cited. But it is said that the regulation in this case is in conflict with and inconsistent with the general laws of the state. The proper solution of this question demands a little closer analysis of two of the sections of the Code hitherto quoted. But for section 2455, it would hardly be claimed that the city council had power to regulate the closing of saloons. Where the mulct law is not in operation, municipal corporations have no power, under the general welfare section (680), to regulate the closing of saloons. Prohibition is still the rule in this state, and it is only in cities which have complied with the provisions of the mulct law that councils have power to pass rules and ordinances regulating saloons. Looking to section 2455 as the source of the city's power, we find that the statute itself requires the closing of saloons on election days, so that an ordinance requiring the same thing would not be a further regulation. Moreover, for breach of the conditions imposed by statute the offender became liable to all the penalties of the prohibitory liquor law; that is to say, he could be prosecuted either civilly or criminally for keeping a nuisance, could be prosecuted for unlawful sales or could have his liquors confiscated. Under the ordinance for doing the same thing he would be punished by fine alone, and this could not exceed $50. In *Foster v. Brown,* 55 Iowa, 686, it appeared that the city of Knoxville had authority to prohibit the sale of intoxicating liquors, unless such prohibition would be inconsistent with the laws of the state at the time existing. The city passed an ordinance prohibiting the sale of intoxicating liquors. At that time the state law forbade the sale of

whisky, and the question arose, was the ordinance incon-
sistent with the state law? Speaking to this, point, the court
said, in effect, that, where the power to punish acts made
criminal by the laws of the state is unqualified, no question
of inconsistency can arise. But that, difficulty arose when
the court was asked to determine whether it would be in-
consistent for the city to exercise the power of punishing
acts made criminal by the laws of the state. Further the
court said in that case: "We cannot presume that the state
is not fully competent to enforce its criminal laws. If so,
it does not need the aid of municipal ordinances. On the
other hand, the attempt of the city to take jurisdiction of
criminal offenses, and punish by different penalties from
those adopted by the state, might easily have the effect to
impair the administration of criminal justice." There is
no essential difference, we take it, between the words "con-
flict" and "inconsistent," and, following the rule of that
case, it would seem that there is a conflict between the ordi-
nance and the statute. See, also, *City of Chariton v. Bar-
ber*, 54 Iowa, 360; *City of Mt. Pleasant v. Breeze*, 11
Iowa, 399. These cases are all distinguishable from the
*Bloomfield Case*, supra, on the ground that in the latter
there was no express authority conferred to punish a per-
son for drunkenness, nor was drunkenness prohibited. The
holding there was that under the general welfare clause the
town might declare drunkenness an offense, and punish any
one violating the ordinance. In the case at bar the ordi-
nance did not further regulate and control the liquor traffic.
It simply reiterated the conditions of the mulct law, and
made violation of any of the provisions an offense punish-
able by fine, as before stated. This fine was very much less
than that imposed by the statutes of the state, and the en-
forcement of the ordinance would, no doubt, have a tendency
to impair the administration of criminal justice. The rule
and ordinances referred to in the statute are additional to
those imposed by statute, and an attempt at making breach

of the condition of the mulct law an offense against the municipality is in conflict with the provisions of the chapter. We really have no occasion to go into the vexed question of the power of a city to punish acts already made criminal by the laws of the state. It is enough to say that municipalities, as a general rule, gain their power and authority from the legislature, and in passing their ordinances are, in effect, enacting special laws, which, to a great degree, supersede the general law within the territorial limits of the corporation. Surely, then, an ordinance covering a subject already fully covered by an act of the legislature is in conflict therewith. See *Village of St. Johnsbury* v. *Thompson,* 59 Vt. 300 (9 Atl. Rep. 571, 59 Am. Rep. 731). We have already referred to and attempted to distinguish the *Bloomfield Case,* and need say no more about it in this connection.

Our conclusion is that the ordinance is not for further regulating and controlling the liquor traffic, and that it is in conflict with the provisions of the chapter known as the "Mulct Law," and cannot be sustained. The judgment is therefore REVERSED.