CITY OF DES MOINES, appellee, v. ALBERT ROSENBERG, appellant.

No. 47923.

(Reported in 51 N.W.2d 450)

FEBRUARY 5, 1952.

Raymond Rosenberg and Charles W. Bowers, both of Des Moines, for appellant.

Lewis A. Royal and Doran L. Williams, city prosecutors, both of Des Moines, for appellee.

WENNERSTRUM, J.—An information was filed on October 22, 1950, in the Municipal Court of the City of Des Moines charging the defendant, Albert Rosenberg, with operating a disorderly place of business by reason of the illegal sale of intoxicating liquor at 216 Fourth Street in Des Moines and in violation of section 106.4 of the 1942 Municipal Code of Des Moines. The defendant pleaded not guilty. Upon trial in that court the defendant was found guilty as charged and he was fined $100 and the costs taxed against him. Thereafter he appealed to the District Court of Polk County, Iowa. Sections 602.44, 762.43, 1950 Code. In that court a jury was waived and upon trial the defendant was found guilty as charged and fined $100 and the costs taxed against him. The judgment provided that in default of the payment of the fine the defendant be committed to the Polk County jail as provided by statute, section 420.36, 1950 Code. The defendant thereafter appealed to this court.

The testimony presented upon the trial shows that on October 22, 1950, two officers of the Des Moines police force, not in uniform, entered the premises previously mentioned between 12:20 and 12:25 a.m. This place of business, known as Carol's Snack Shop, faced the east on Fourth Street and had a restaurant in the front. Immediately behind the restaurant and to the west was a partition in which there was a door. This door had a glass panel a foot wide and ten inches high. This glass appeared to be a mirror from the restaurant side, but one could see through it from the other side. Back of this partition was a room in which there were tables, chairs, a juke box, a small stage with a piano on it and on one side a bar. This back room is approximately twenty feet wide and sixty feet in depth from east to west. The testimony of the officers disclosed that they observed at that time thirty to thirty-five persons in the room, that they did not see anyone served food there but that many of the people who were in this back room were drinking from glasses. It is further shown that at the time the officers entered the restaurant

they observed the appellant on the sidewalk immediately in front of this place of business, that when they entered he followed them in and that they later saw him in the back room walking toward the bar. When the officers were seated at a table a waitress came up to them and left four glasses on their table, two with water and two in which there was an amber-colored fluid. They observed similarly filled glasses on other tables and in front of other customers. They testified that they were familiar with the taste of whiskey and that the colored liquid was an alcoholic beverage which they believed to be whiskey. One of the officers siphoned the amber liquid into a syringe and placed it and the glass in his pocket and substituted a glass he had brought with him. This glass and the liquid was introduced in evidence along with the stipulated testimony of a chemist to the effect that the sample examined by him contained an alcoholic content of 40.7 per cent by volume. Later on that same morning the officers purchased two more drinks and it was testified to by one of them that this later purchased liquid was also an alcoholic beverage and in his judgment was whiskey. About 1 a.m. of the morning in question a buzzer was sounded and the two waitresses shouted, "Drink or dump." At that time the appellant, Rosenberg, and one of the waitresses began clearing glasses from the tables in the west room, and about this same time two other officers entered the room and arrested about sixty-eight persons then in the west room, and later the appellant. The evidence further shows that during the time the two plain-clothes officers were in this place of business the appellant was not observed to be seated at any of the tables but walked up and down the aisles between them and occasionally talked to the man in charge of the door and the waitresses serving the patrons. The appellant was later found in a small office in the northwest corner of the west room forty-five minutes after the raid commenced. At that time this room was locked and the doorkeeper obtained a key and opened it for the officers. The appellant was in this room with the lights off.

It is the contention of the state that the appellant was shown to be connected with the operation of the premises by the following facts disclosed by the testimony: that on October 22, 1950, the appellant refused the police officers access to the cash register

without a court order; that in September of that same year he had shown certain officers around the west room and commented concerning certain of the fixtures and equipment there; that on a certain day in July 1950 the appellant questioned the right of a police officer to enter the west room through the door from the restaurant; that on that occasion the officer said he might have to get a warrant and go through the door. This officer testified that the appellant then responded, "We will see to that. After all, I have some rights. I have a right to protect my property." On another occasion an officer accused the appellant of being a bootlegger and at that time he replied that the State of Iowa sold whiskey and he had just as much right to do it as they. On another date when there was a conversation relative to the sale of whiskey by the State of Iowa the appellant is quoted as stating: "If that is the law that the State of Iowa can sell whiskey I can too."

It is further shown that on occasions when a police officer entered the premises and endeavored to go into the back room he was unable to obtain entrance but that when the appellant knocked on the door both the appellant and the officer were admitted. It is further shown that on the several occasions when one of the police officers had previously visited the business establishment in question he usually found the appellant in or about the premises and these occasions would be during the daytime, early evenings and after midnight. The evidence presented also showed that the applications for meter service for the electrical and gas meters installed at 216 Fourth Street, Des Moines, Iowa, were in the name of the appellant and that bills for these services were mailed to Al. Rosenberg at the address previously mentioned. It is also shown that the application for telephone service at Carol's Snack Shop was made by a person named Al. Rosenberg. The meter service records in the office of the Des Moines Water Works show that an application for water service at this place was made by an individual identifying himself as Al. Rosenberg and that statements were sent to that name at the address where the water was furnished.

It was the contention of the appellant in the district court and now in this court that the city ordinance upon which he was charged in the municipal court was in conflict with the state law

pertaining to similar acts and was therefore invalid. It is claimed that section 106.4 of the Municipal Code of the City of Des Moines, the section under which appellant was originally charged, covers the same type of violations as those enumerated in section 123.60, 1950 Code of Iowa.

It is further contended that the evidence as presented was insufficient to sustain that the appellant was one of the operators of the premises known as Carol's Snack Shop and that the evidence did not sustain the verdict of guilty as charged in the information. A further claimed error on the part of the trial court was the admission in evidence of the records pertaining to the installation of electrical, gas, telephone and water service on the ground that there is no showing that the Al. Rosenberg shown by the several utility records as the individual who made oral application for them was the same individual charged in the action now before us for review.

Section 106.4 of the 1942 Municipal Code of the City of Des Moines is as follows:

"106.4 Disorderly house. No person, firm or corporation shall keep, maintain or operate or be concerned in keeping, maintaining or operating within the city of Des Moines any gambling house, bawdy house, disorderly house, house of ill fame, or roadhouse where lewdness is carried on, opium or hop joint or place resorted to for the use of opium or hasheesh or place where intoxicating liquor is illegally kept, sold or otherwise dispensed; and no person shall frequent or be found in any such place or be employed therein.

"It shall be unlawful for any person knowing the character or reputation of any such place to transport others to or from the same."

Sections 123.60 and 123.61 of the 1950 Code of Iowa, and which the appellant claims are in conflict with the city ordinance, are as follows:

"123.60 Nuisances. The building, erection, or place, or the ground itself, in or upon which the unlawful manufacture or sale, or keeping with intent to sell, use or give away, any alcoholic liquors is carried on or continued or exists, and any vehicle or other means of conveyance used in transporting such

liquor in violation of this chapter, and the furniture, fixtures, vessels and contents, kept or used in connection therewith, are declared a nuisance and shall be abated as in this chapter provided.

"123.61 Penalty. Whoever shall erect, establish, continue or use any building, erection or place for any of the purposes prohibited in section 123.60, is guilty of a nuisance and upon conviction shall be punished by a fine of not less than three hundred dollars, nor more than one thousand dollars, or imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment and shall stand committed until such fine imposed is paid."

The further statutory enactment which can well be considered in connection with this case is section 366.1, 1950 Code, which is as follows:

"Power to pass. Municipal corporations shall have power to make and publish, from time to time, ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by this title, and such as shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof, and to enforce obedience to such ordinances by fine not exceeding one hundred dollars, or by imprisonment not exceeding thirty days."

Section 368.7, 1950 Code, which enumerates the powers given to municipalities to legislate on certain subjects is, in part, as follows:

"Power to restrain and prohibit. They shall have power to restrain and prohibit: * * *

"9. *Gambling houses*. Gambling houses, bawdy houses, disorderly houses, houses of ill fame, roadhouses where lewdness is carried on, opium or hop joints or places resorted to for the use of opium or hasheesh, and places where intoxicating liquor is illegally kept, sold, or given away, and to punish the keepers and inmates thereof, and persons resorting thereto, and persons

who, knowing the character or reputation of such places, transport others to or from any of the above described places."

■ I. We cannot conclude, as urged by the appellant, that there is a conflict between the city ordinance previously quoted and section 123.60, 1950 Code. It is true that both the ordinance and the statute deal with the illegal sale of intoxicating liquors but that does not necessarily mean that the city does not have authority to legislate on this subject matter. This is particularly true when the state has given municipalities the right to legislate on matters covered by the ordinance in question. Sections 366.1, 368.7, 1950 Code.

■ This court, in the case of Town of Neola v. Reichart, 131 Iowa 492, 494, 495, 498, 499, 109 N.W. 5, 6, commented on the question here raised by the appellant. We there stated:

"May a city or incorporated town declare acts offenses against the municipalities, and prescribe punishments therefor, when the same acts are denounced as misdemeanors by the statutes of the State and punished accordingly? If such power is specifically conferred, the authorities agree that it may be excised. The conflict arises in determining whether such authority is to be implied from statutes conferring general powers upon municipalities to enact such ordinances. This court is committed to the doctrine that if the subject of the ordinance is fairly within those powers conferred upon the town or city, the mere fact that the matter has been covered by statute will not invalidate the ordinance. This was settled in *Town of Bloomfield v. Trimble*, 54 Iowa 399. In that case an ordinance denouncing intoxication and fixing a penalty was upheld, though there was a statute to the same effect. * * *

"Municipal corporations 'are bodies politic and corporations vested with political and legislative powers for local civil government and police regulations of the inhabitants of particular districts included in the boundaries of the corporations.' They are in many respects local governments established to aid the government by the state. The necessity of their organization may be found in the density of the population of localities and the conditions incidental thereto. Because of this, regulations peculiar to a particular community have proven essential to the

accomplishment of its objects. Many acts are far more injurious, and the temptation to commit them much greater, in such localities than in the state at large, and, when done, are not only wrongs to the public at large, but additional wrongs to the corporations within which perpetrated. When made penal by both state and.city or incorporated town, each becomes a separate offense against the state and against the municipality. The penalty imposed by the city or town is superadded to that fixed by statute on account of the additional wrong done, so that the wrongdoer is not punished twice for the same offense, but for two offenses arising from the same act. * * *

"The object of such an ordinance is not to punish an offense against the criminal justice of the entire state, but to provide a mere police regulation for the maintenance of good order and the protection of the comfort, health, and morals of the people of the particular community. The offense against the corporation and that against the state are wholly disconnected, and are to be distinguished the one from the other, as the prosecution at the instance of each proceeds upon a different hypothesis; the one contemplating the maintenance of peace and welfare of the city, while the other has a wider scope—the peace and dignity of the state."

In the case of Blodgett v. McVey, 131 Iowa 552, 555, 108 N.W. 239, 241, this court had occasion to pass upon the claimed inconsistency and conflict of a city ordinance and a state statute relative to gambling. We there stated:

"The ordinance under which conviction was had makes it unlawful for any person to gamble, and provides further that any person found guilty thereof shall 'be punished by fine of not more than one hundred dollars or by imprisonment not more than thirty days.' It is contended that the ordinance is inconsistent and in conflict with the general statute, and is therefore void. The plaintiff's argument on this proposition is very brief, and but one case is relied upon in support thereof, viz., *Iowa City v. Mc-Innerny*, 114 Iowa 586, which we shall more fully note further along. The ordinance in question clearly covers a subject which is fully covered by a general statute, and unless the power to enact such an ordinance has been expressly granted, or is clearly

to be implied from the charter or law, it should be held to be void under the rule of the Iowa City-McInnerny case and other cases of like character. On the other hand, if the power to punish acts made criminal by the laws of the State has been unqualifiedly conferred upon a city, no question of inconsistency or conflict can arise. *Foster v. Brown*, 55 Iowa 686; *Town of Bloomfield v. Trimble*, 54 Iowa 399; *Village of St. Johnsburg v. Thompson*, 59 Vt. 300 (9 Atl. 571, 59 Am. Rep. 731); 1 Dillon on Municipal Corporations (3d Ed.) section 366; Cooley's Con. Lim. (6th Ed.) 239. Nor is this rule in conflict with the holding in the Iowa City-McInnerny case, *supra*, where it is in effect held that the city had not been granted the power to enact the ordinance there involved."

In the present case, as in the Blodgett case, it is contended that the case of Iowa City v. McInnerny, 114 Iowa 586, 87 N. W. 498, is controlling. As held in the case last quoted, we hold that the Iowa City-McInnerny case is not applicable. As previously quoted in the Blodgett case, we hold that in the Iowa City-McInnerny case the city had not been granted the power to enact the ordinance there involved. That is not true in the instant case.

As bearing on the question herein discussed, see Boehner v. Williams, 213 Iowa 578, 582, 239 N. W. 545.

II. Appellant contends that the ordinance heretofore set forth conflicts with the Iowa Liquor Control Act, chapter 123, 1950 Code, and is repealed by section 123.2 which is as follows:

"Conflicting statutes superseded. Wherever any provisions of the existing laws are in conflict with the provisions of this chapter, the provisions of this chapter shall control and supersede all such existing laws."

In connection with this contention it should be noted that we have heretofore passed on this claim now made by the appellant. In dealing with the effect of the repealing statute in chapter 123 we stated in State v. Blackburn, 237 Iowa 1019, 1022, 22 N.W.2d 821, 823: "Section 1921.002 [123.2, 1950 Code] purports only to operate as a repeal of existing laws found to be in conflict with the new legislation." See also Rand v. Ladd, 238

Iowa 380, 386–388, 26 N.W.2d 107; State ex rel. Kuble v. Bisignano, 238 Iowa 1060, 1065, 28 N.W.2d 504.

It would seem unnecessary to cite our many cases which hold repeal of statutes by implication is not favored. However, some of our later cases which have dealt with this matter are: Merchants Supply Co. v. Iowa Employment Security Comm., 235 Iowa 372, 381, 16 N.W.2d 572; Buser v. Kriechbaum, 229 Iowa 888, 896, 295 N.W. 455; Johnson County v. O'Connor, 231 Iowa 1333, 1336, 4 N.W.2d 419, and DeShaw v. South Fork Twp. Sch. Dist., 231 Iowa 27, 32, 33, 300 N.W. 650.

III. If testimony is improperly admitted in a trial of a case before a court without a jury and over objections, it will be presumed that the court considered such evidence. This was our holding in a civil action. In re Estate of Conner, 240 Iowa 479, 492, 36 N.W.2d 833, and cases cited. And in a criminal action such as here considered our holding should be the same.

We are therefore concerned whether the stipulated testimony pertaining to the installation of the several utilities and the connection of the name Al. Rosenberg with it was properly considered in evidence. We hold that this testimony was of a circumstantial nature and had a bearing upon the question whether the appellant was connected with the carrying on of the business at the place in question.

"Circumstantial evidence is admissible where it leads to a reasonable inference and not a mere suspicion of the existence of the fact sought to be proven. The trial court usually has considerable discretion in ruling on the admissibility of circumstantial evidence. A wide latitude is generally allowed in admitting it where direct evidence is lacking to establish a party's theory. 22 C. J. S. 928, section 604; 20 Am. Jur. 260, 261, section 273; 26 Am. Jur. 365, 366, section 312; Smith v. Pine, 234 Iowa 256, 265, 12 N.W.2d 236, 242, and citations." State v. Sedig, 235 Iowa 609, 616, 16 N.W.2d 247, 251.

In State v. Knox, 236 Iowa 499, 514, 18 N.W.2d 716, 723, we stated: "All facts are admissible in evidence which afford reasonable inferences or throw any light on the matter contested."

Under all the facts otherwise shown in the record it is our

conclusion that the evidence in question was material and relevant and that there was no error in admitting it.

■ IV. The appellant contends that on the entire record there was not sufficient evidence upon which to justify a verdict of guilty. There is no merit to this contention. A short answer to this complaint is that if the case had been tried to a jury it is our conclusion there was sufficient evidence upon which to submit to the jury the question of appellant's guilt. The record would not justify a holding that there should have been a directed verdict for him. We shall not detail again the evidence presented. However, we can advisedly state that the appellant offered in evidence a deed dated October 14, 1948, wherein he was named the grantee. It is therein shown that he owned the building in which Carol's Snack Shop was located. It is true there is a lease in the record from the former owners of the building to a certain Evelyn Blumberg for restaurant purposes. This last named person was not called to testify and explain her ownership or control over the place. In fact the evidence shows that certain wages of employees were paid by persons not shown to be in any way connected with the place of business.

■ Although the state must prove the appellant guilty beyond a reasonable doubt, yet in connection with that question the court could, and undoubtedly did, consider the fact that the appellant did not testify in his own behalf. This would be proper. State v. Holder, 237 Iowa 72, 82, 83, 20 N.W.2d 909.

We find no basis for reversal and therefore affirm.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.